UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ACME AMERICAN REPAIRS, INC.; ACME
AMERICAN ENVIRONMENTAL CO., INC.;
ACME COMMERCIAL KITCHEN DESIGN,
INC.; ACME AMERICAN REFRIGERATION,
INC.; ACME PACIFIC REPAIRS, INC.; BANA
PARTS, INC.; and BANA COMMERICAL
KITCHEN, INC.,

                  Plaintiffs,             **MEMORANDUM & ORDER**

      - against -                           03-CV-4740 (RRM)(SMG)

HARVEY KATZENBERG and PEARL
KATZENBERG, f/k/a PEARL FEUER,

                  Defendants.
------------------------------------------------------------------X
------------------------------------------------------------------X
HARVEY KATZENBERG, individually and
derivatively as a shareholder of and on
behalf of Acme American Repairs, Inc.,

                  Plaintiff,

      - against -                           14-CV-5515 (RRM)(SMG)

BIRINDER MADAN,

                  Defendants.
------------------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge.

## BACKGROUND

      Before the Court are pending motions for summary judgment in each of the above-captioned actions.[1] The Court presumes the parties' familiarity with these actions, which constitute two of the myriad lawsuits filed between these and related parties both in federal and

---

[1] Also pending in the 2014 action is a request by Katzenberg for preliminary restraint of assets ostensibly controlled by Madan.

state courts over more than a decade, all arising out of the parties' relationships to the interrelated "Acme Companies" and others.

In brief, the 2003 action is predicated upon an alleged scheme by former Acme employees to defraud certain non-party insurance carriers. The Acme Plaintiffs seek to recover damages allegedly done to the Acme companies through that scheme – a scheme which they claim was orchestrated exclusively by former Acme corporate officers (and now husband and wife), Harvey and Pearl Katzenberg.[2]

The 2014 action is a derivative action brought by Harvey Katzenberg, principally seeking to undo the "sale" of a building located at 99 Scott Avenue in Brooklyn by Acme American Repairs, Inc. through one of its principals, Birindir Madan, to Gholis of Brooklyn Corp., on or about May 21, 2013.[3] As Katzenberg alleges in his Complaint, Gholis is an entity controlled by Madan, and the transfer was made for nominal consideration. In so doing, Katzenberg claims, Madan breached his fiduciary duty to Acme Repairs. Katzenberg seeks to vindicate the rights of all shareholders of Acme Repairs through the 2014 derivative action, brought pursuant to Fed. R. Civ. P. 23.1. He claims to be a shareholder of Acme Repairs at the time the 2014 action was filed on September 19, 2014, or in the alternative, claims to have a sufficient interest in Acme American to bring such derivative action.

    1. <u>Katzenberg's Ownership of Acme Stock and the Default Judgment Action Before Justice Grays</u>

---

[2] Following this Court's decision on the parties' cross-motions for summary judgment, state law claims of fraud and breach of fiduciary duty against the Katzenbergs remain, subject to the common law defense of *in pari delicto*. *See Acme American Repairs, Inc. et al. v. Katzenberg et al.*, 2010 U.S. Dist LEXIS 100803 (E.D.N.Y. September 24, 2010).

[3] In the 2014 action, Katzenberg also seeks injunctive relief to compel Acme American to require his signature on all corporate checks, ostensibly based on an allegation that Acme was further "looted" through credit card purchases and other unwarranted expenses. Though he attaches to his motion a plethora of receipts and credit card records, he provides not one shred of argument in support of such relief in his papers.

However, central to both summary judgment motions is the question of Katzenberg's relationship to Acme Repairs, raising a legal issue that has been hotly contested by the parties here, and in related state court litigation. In brief, the relevant circumstances are as follows, and are not in dispute.

On or about March 21, 2001, Katzenberg, at the time the owner of 50% of the issued and outstanding shares of Acme Repairs, sold that entire interest to one Derval Lazarri, another key employee of the Acme Companies. *See* Promissory Note and Security and Pledge Agreement, Doc. No. 20-3. Madan owned then, and continues to own today, the remaining 50% of the issued and outstanding shares of Acme Repairs. In and around August 2013, Lazarri defaulted on his obligations to Katzenberg.[4]

December 4, 2013, upon termination of all relevant periods in which Lazarri could cure his default, Katzenberg filed an action in the Supreme Court of the State of New York, County of Queens against Lazarri for breach of the terms of the Promissory Note and Stock Purchase Agreement, and seeking a judgment to retain all monies paid by Lazarri to date and to reacquire ownership of the shares of Acme that Lazarri had purchased. *See Katzenberg v. Lazarri*, Index No. 705665/2013. ("Lazarri Default Action.") The matter was and still is assigned to the Honorable Marguerite A. Grays.

Lazarri defaulted in that action, and Katzenberg moved for default judgment, which Justice Grays decided in a written opinion signed on June 16, 2014 and filed on July 2, 2014. *See* Doc. No. 294-1 (2003 action). (hereinafter "Default Opinion"). The brief memorandum simply noted that plaintiff had made out a prima facie case, which shifted the burden to Lazarri

---

[4] Lazarri was indicted in the Southern District of New York on September 11, 2014 for Wire Fraud and Conspiracy in connection with submitting over $1 million in fraudulent invoices to the New York City Department of Education for parts, equipment and services that were never provided. *See U.S. v. Lazarri*, Ind. No. 14-CR-616, Doc. No. 20-16.

3

to establish a triable issue of fact, a burden not met because Lazarri failed to oppose the motion. *Id*. Justice Grays granted the unopposed motion, and directed the parties to "Settle Judgment." *Id*.[5]

Judgment did not enter until April 23, 2015, nearly nine months after Justice Grays' Default Opinion. In it, Justice Grays declared that Katzenberg is the owner of specific percentages of the issued and outstanding shares of several of the Acme Companies, including 50% of the shares of Acme Repairs. She also ordered Acme Repairs to "immediately issue one or more stock certificates to Katzenberg reflecting that he is the owner of 50% (Fifty per cent) of the issued and outstanding stock thereof." *See* Doc. No. 294-1 (2003 action).

Katzenberg took no action in state court to expedite the entry of judgment during the period between Justice Grays' Default Opinion and her entry of judgment.[6] Instead, Katzenberg took steps in *this court*: he filed motions for summary judgment in both the 2003 and 2014 actions, the very motions that are now before this Court. Central to both motions is Katzenberg's status as a shareholder of Acme.

    2. The Instant Motions for Summary Judgment

The motion in the 2003 action was filed on February 24, 2015 and seeks summary judgment on Katzenberg's First Counterclaim. Notably, the counter-claim seeks the very relief, and for the very reasons, that had already been litigated before Justice Grays, and was to be awarded upon the settlement of judgment that Justice Grays then had under submission.[7] Now that Justice Grays has issued her judgment awarding the shares to Katzenberg, Katzenberg has

---

[5] The Acme Companies sought leave to intervene in this action in an attempt to prevent Katzenberg from reclaiming ownership of the shares sold to Lazarri. That motion was denied in a second written opinion issued by Justice Grays on June 16, 2014. *See Katzenberg v. Lazarri*, Index No. 705665/2013, Order Dated June 16, 2014, Mot. Seq. No. 2.
[6] He did weigh in on Acme's further efforts to stop Justice Grays from transferring the shares from Lazarri to Katzenberg as part of the judgment.
[7] The counterclaim was filed *after* Katzenberg initiated the suit for default judgment against Lazarri in state court before Justice Grays.

obtained a judgment for the very relief sought, and on the same grounds, as he seeks in the summary judgment in the 2003 action presently before this Court.

The motion in the 2014 action seeks summary judgment on Katzenberg's First Cause of Action (and incidentally, Madan's First, Second and Third Affirmative Defenses). This cause of action as pled alleges a breach of fiduciary duty in the transfer to Gholis of the 99 Scott Avenue property. *See* Compl., Doc. No. 1 at ¶¶ 32-36. The summary judgment motion sets forth as the basis of the motion *two transfers* of the property: the Gholis transaction, on May 21, 2013, and a second to Bushwack 10 LLC on December 19, 2014, an innocent third purchaser for value, who paid in excess of $8 million for the property. In addition, after full briefing on summary judgment, Katzenberg learned that Gholis attempted to sell the property to another entity, Scott Randolph LLC., which entity placed an $832,500 deposit on the transaction. That contract deposit is now the subject of litigation between the parties, and Katzenberg now claims that he is entitled to reach that deposit on the instant summary judgment motion. *See* Ltr. of Mark L. Kalish, May 18, 2015, Doc. No. 48. As discussed more fully below, there are no allegations in the Complaint regarding the Bushwack or Scott Randolph transactions, and Katzenberg has not sought to amend.

    3. <u>Actions Subsequent to the Filing of the Instant Motions</u>

To close the loop, there are additional developments that merit mention as they impact the posture and the substance of those motions, some which occurred after the filing of the instant motions, and some after the filing of the instant litigation. The Court begins with relevant developments in state court.

First, despite Justice Grays judgment ordering Acme to re-issue the shares to Katzenberg, Acme has failed to so do. This has prompted Katzenberg to seek an order of contempt against

5

Acme in the *Lazarri* default litigation before Justice Grays. Second, Katzenberg, claiming to be a shareholder, has filed a new action, also pending before Justice Grays, seeking to dissolve Acme Repairs. *See Katzenberg v. Acme American Repairs Inc.*, Index. No. 706716/2015.[8] Third, Madan and the Acme Companies have filed an action against Lazarri, seeking, *inter alia*, a declaration that Justice Grays order transferring the stock back to Katzenberg without Madan's consent as the second shareholder violates the terms of Acme's Stockholders Agreement and further restrictions on transfer of Acme stock agreed to by Lazarri and Madan.[9] *See Madan et al v. Lazarri*, Index No. 704356/2015 (N.Y. Supreme Ct., Queens County) (Purificacion, J., presiding).

There have been developments and new issues raised in this Court as well. First, Acme seeks to move to dismiss the First Counterclaim in the 2003 action, claiming that there is no live controversy now that Katzenberg has obtained the relief sought on the counterclaim in the Lazarri Default Action. *See* Ltr. of Mikhail Ratner, May 11, 2015 at Doc. No. 298. Second, Acme seeks to disqualify counsel for Katzenberg, the law firm of Moss and Kalish, in both actions, based on the firm's representation of one Greg Rowehl, the president of Commercial Kitchen Design ("CKD"), another company closely affiliated with the Acme Companies. According to Acme, "Mr. Rowehl was one of the first, if not the first, at the Acme companies to uncover and expose Mr. Katzenberg's massive fraud, which is at the center of these disputes [the 2003 and 2014 actions]. In the course of his involvement in the aforementioned disputes, Mr. Rowehl was privy to highly confidential and privileged information that involved these lawsuits

---

[8] The action was originally filed in New York County under Index No. 651197/2015 and transferred to Queens, and to Justice Grays, following a successful motion to change venue by Acme.
[9] Indeed, these were the very claims Acme attempted to assert in its motion to intervene in the Lazarri default judgment action before Justice Grays. In addition, Acme is appealing the denial of the motion for intervention, asserting, among others, these same grounds.

and the Acme companies.  *See* Ltr. Mikhail Ratner, April 17, 2015, Doc. No. 290 (2003 action). While Katzenberg's counsel denies any conflict, the issue remains open.

Against this complex and lengthy history, the Court turns to the motions at hand.  For myriad reasons, Katzenberg's motions for summary judgment fail.

## DISCUSSION

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no issues of material fact in dispute and that one party is entitled judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, the evidence of the non-movant "is to be believed" and the court must draw all "justifiable" or "reasonable" inferences in favor of the non-moving party.  *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)); *Brosseau v. Haugen*, 543 U.S. 194, 195 n.1 (2004).  Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial,'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original), and "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (citing cases).  In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256.  Where "the nonmoving party bears the burden of proof at trial,

summary judgment is warranted if the non-movant fails to make a showing sufficient to establish the existence of an element essential to [its] case." *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (quoting *Celotex*, 477 U.S. at 322) (internal quotation marks omitted) (alteration in original). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996) (citing *Anderson*, 477 U.S. at 247-48).

      1. <u>The Motion in the 2003 Action</u>

Katzenberg's motion for summary judgment fails for several reasons. In the first instance, Katzenberg claims he is entitled to summary judgment on his first counterclaim and "to have the shares issued by virtue of the decision rendered by Justice Marguerite Grays on June 16, 2014 in the Supreme Court of the State of New York, County of Queens, which declared Katzenberg to be the owner of these shares." Pl. Mem. in Support, Doc. No. 281-8 at 1-2. And in the same breath, he acknowledges: "We recognize that the order issued by Justice Grays declaring Katzenberg to be the rightful owner of the stock is not yet a judgment." *Id*. at 4. Thus, this counterclaim fundamentally seeks to enforce an action of a state court judge, not even a binding judgment. Katzenberg cites no legal mechanism or authority to so do, and his motion fails on this ground alone. Moreover, the relief requested is nothing short of an end run around Justice Grays. Such intervention by a federal court, particularly in the midst of Justice Grays' efforts to settle judgment on her Default Opinion, invoke similar sound principles of comity that augur in favor of abstention. *See Younger v. Harris*, 401 U.S. 37 (1971); *Colorado River Water Cons. Dist. V. United States*, 424 U.S. 800 (1976).

Perhaps these reasons are why Katzenberg argues in the alternative that this Court should "evaluate the merits of this application independent of Justice Grays' ruling …." Pl. Mem. in Support at 5. Yet, the "application" on which he seeks this Court's ruling is a breach of contract action against *Lazarri*, who is not a party to the 2003 action, nor is such action pled in the counterclaim on which Katzenberg seeks summary judgment. This alone is fatal to his motion. Moreover, in his motion, Katzenberg sets forth no facts from which this Court could evaluate Lazarri's breach of contract, other than the operative Promissory Note and Stock Purchase Agreement, nor does he articulate any law as to why he is entitled to judgment.[10]

Finally, as Acme notes in its post-briefing letter seeking to move to dismiss the First Counterclaim, "the issues presented therein are no longer 'live' before this Court" now that Justice Grays' judgment has entered and Katzenberg has obtained the very relief it seeks on this motion. *See, e.g., Bank of China, New York Branch v. Bank of China, Hong Kong Brankch*, 243 F. App'x 652, 655 (2d Cir 2007) ("In general a case becomes moot when the issues presented are no longer live." (citing *Murphy v. Hunt*, 455 U.S. 478 (1982).)[11] This change in circumstances in the Lazarri Default Action changes the entire posture of Katzenberg's motion, which warrants denial of summary judgment on the First Counterclaim.

    2. The Motion in the 2014 Action

The Court now turns to Katzenberg's motion for summary judgment in the 2014 action on his derivative claim against Madan for breach of his fiduciary duty to Acme Repairs in transferring the 99 Scott Avenue property to Gholis on or about May 21, 2013. As noted above,

---

[10] Acme did not formally respond to the motion, but provided a letter setting forth its grounds on order of the Court. *See* Doc. 281-5. While Katzenberg argues that Acme's arguments are frivolous, Katzenberg must still set forth sufficient facts and law when, taken in the light most favorable to Acme, warrants summary judgment in favor of Katzenberg. He has not done so here.

[11] Katzenberg never responded to this argument, despite weighing in numerous times post-briefing to amplify his own claims, as discussed more fully below.

9

while the Complaint focuses on the transfer to Gholis, Katzenberg's motion seeks judgment with regard to a second transfer to Bushwack 10 LLC on December 19, 2014, an innocent third purchaser for value, who paid in excess of $8 million for the property. This is no surprise, as Katzenberg recognizes the difficulties he has in asserting his own standing to bring a derivative claim under Rule 23.1, and the well-settled "contemporaneous ownership rule" which precludes derivative claims by an individual for conduct that pre-dated their ownership of shares in the company. *See, e.g., In re Bank of New York Derivative Litig.*, 320 F.3d 291 (2d Cir. 2003); *see also SC Note Acquisitions, LLC v. Wells Fargo bank, N.A.*, 934 F. Supp. 2d 516 (E.D.N.Y. 2013), *aff'd*, 548 F. App'x. 741 (2d Cir. 2014). Katzenberg repeats throughout his motion that he is a "shareholder of Acme American Repairs Inc." But that was not the case at the time of the Gholis transfer, as Lazarri had not yet defaulted; nor was it the case at the time of the Bushwack 10 transaction, which occurred after Justice Grays issued her Default Opinion but before judgment entered, despite Katzenberg's blanket assertion that he "became a shareholder as of June 16, 2014, the date of Justice Gray's order." Pl. Mem. in Support at 11.

Recognizing this, Katzenberg attempts to proffer another basis for standing, arguing that his purported status as a pledgee of Acme's stock gives him the right to bring this derivative claim. *Id*. This is an issue on which the parties spend considerable effort in their briefing. There is some support for the notion that derivative claims may be brought by individuals, including certain types of pledgees, who are not shareholders but who have other continuing interests in a company's shares sufficient to warrant protection of those interests through a derivative claim. *In re Pittsburgh & L. E. R. Co. Sec. & Antitrust Litig.*, 543 F.2d 1058, 1067 (3d Cir. 1976) (recognizing an equitable interest of a pledgee of stock for purposes of a Rule 23.1 derivative action); *Jacobs v. Adams*, 601 F.2d 176, 179 (5th Cir. 1979) ("it is apparent that the executors in

this case had the power and the right under the applicable New York law to bring the derivative action."); *Hoff v. Sprayregan*, 52 F.R.D. 243, 247 (S.D.N.Y. 1971) ("While a convertible debenture of the kind in question is obviously a hybrid, the interest of its holder in the corporation's stock is sufficient for our purposes to satisfy the requirement of Rule 23.1.") But in his papers, Katzenberg fails to point specifically to any provision in the Promissory Note or Stock Purchase Agreement, or any other documents, to suggest that he had any continuing interest in Acme stock. To the contrary, in the 2001 Promissory Note, Katzenberg acknowledged that the transfer to Lazarri "constitutes an absolute sale of [Katzenberg's] rights, title and interest in all of [his] shares of [Acme's] common stock" and that he "had no continuing interest or right to any common stock [of Acme]." Promissory Note, Doc. No. 20-3 at 3.

However, this issue need not be resolved, for Katzenberg's motion fails for other reasons. First, there are material disputes of fact with respect to the circumstances surrounding Acme's acquisition of the 99 Scott Avenue property, and its transfer to Gholis. For example, Katzenberg's evidence concerning these transactions is limited solely to deeds and other documents filed on the public record with the Office of the New York City Register, among others. From that, he attempts to paint a very straightforward picture suggesting that Madan breached his fiduciary duty to Acme: Acme Repairs "acquired pursuant to deed" the premises for consideration of $3.3 million, and then Gholis, an entity he alleges on information and belief is controlled by Madan, "acquired, pursuant to deed" the premises from Acme, the consideration for which was $10 as is set forth in the records of the City Register. This transfer for little or no consideration to a company controlled by Madan, Katzenberg concludes, constitutes "a breach of fiduciary duty and the wasting and looting of a major asset belonging to Acme." Pl. Mem. in Support at 4-5, 7. It is not surprising that Katzenberg has no personal knowledge of these

transactions and must resort to the public record; after all, he had sold his shares in the company to Lazarri a decade earlier. But in opposition, Madan raises a number of material factual issues, including a more complex series of transactions, particularly with respect to the financing both for the acquisition of the property by Acme, and for the transfer to Gholis, transactions that Madan asserts were on advice of counsel, approved by the company's shareholders, and in the interests of Acme. Katzenberg fails to rebut any of this on his reply. Katzenberg has not submitted sufficient evidence to support his claim for breach of fiduciary duty with regard to the Gholis transaction, particularly in light of the competing facts submitted in opposition.[12]

Once again recognizing the weaknesses of his arguments with regard to the Gholis transfer, Katzenberg claims that he is entitled to summary judgment based on the transfer in December 2014 to Bushwack 10. He does so in an attempt to bolster his standing to bring this derivative action, as the Bushwack transaction occurred after Judge Grays' Default Opinion, thereby giving Katzenberg additional support for his assertion that he is a true shareholder of Acme.

However, Katzenberg cannot rely on the Bushwack transfer. It occurred *after* the filing of the 2014 action, and Katzenberg's Complaint is wholly devoid of any facts concerning this transaction. Katzenberg's First Cause of Action, the sole basis for summary judgment, is limited to the Gholis transaction. He has not sought to amend his Complaint to add the Bushwack transaction, and he cannot do so through his opposition papers. *See Melvin v. US Local 13 Pension Plan*, 236 F.R.D. 139, 143 (W.D.N.Y. 2006). The Bushwack transaction is in no way

---

[12] Katzenberg attempts to bolster his claim of breach of fiduciary duty against Madan by pointing to the Lazarri indictment, and a plethora of expense records, credit card bills, and other documents that Katzenberg alleges, in conclusory fashion, further demonstrate wasteful spending of corporate assets. But these documents do not save Katzenberg's First Cause of Action, which relates solely to the Gholis transfer.

related to the Gholis transfer.  They occurred more than a year apart, under completely different circumstances.[13]  Indeed, in his motion papers, Katzenberg himself maintains:

> The harm to Acme Repairs from the transfer to Gholis was temporary.  The harm to the company from this latest transfer [the Bushwack transfer] is permanent.  This latest transfer is, in fact, the core of the wrong.

Pl. Mem. in Support at 14.  Though made to augment his standing argument, his words resonate in this context as well.  While the Bushwack transfer is the "core of the wrong," it is not the core of the claim on which he seeks summary judgment.  This prong of Katzenberg's motion must fail as well.

### 3. Motion for Injunctive Relief

Katzenberg also seeks injunctive relief in the 2014 action.  For the reasons herein, Katzenberg has not demonstrated a likelihood of success on the merits, or sufficiently serious questions going to the merits to make them a fair ground for litigation.  *Moore v. Consolidated Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005), citing *No Spray Coalition, Inc. v. City of New York*, 252 F.3d 148, 150 (2d Cir. 2001) (*per curiam*).  Injunctive relief is, however, "an extraordinary and drastic remedy," and "one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (emphasis in original omitted), quoting 11A C. Wright et al., Federal Practice and Procedure § 2948, pp. 129–30 (2d ed. 1995).  Nor has he shown irreparable harm, as he can be recompensed with a money judgment should he prevail on his claims.  *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 233–34 (2d Cir. 1998) (internal quotation marks omitted), citing *Bell & Howell: Mamiya Co. v. Masel Supply Co*., 719 F.2d 42, 45 (2d Cir. 1983) ("Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction.").  As such, he is not entitled to the preliminary injunctive relief he seeks.

---

[13] Katzenberg also acknowledges that it was made for full value.

## CONCLUSION

For the reasons stated herein, Katzenberg's motions for summary judgment in both the 2003 and 2014 actions are DENIED.

SO ORDERED.

Dated: Brooklyn, New York
September 30, 2015

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge